No. 24-60601

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ARNETT JACKSON BONNER,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:23-CR-144-1

---

**BRIEF FOR APPELLANT ARNETT JACKSON BONNER**

---

**Omodare B. Jupiter** (MSB #102054)
Federal Public Defender

**Leilani Leith Tynes** (MSB #100074)
Assistant Federal Public Defender
Southern District of Mississippi
2510 14th Street, Suite 902
Gulfport, Mississippi 39501
Telephone:  (228) 865-1202
Facsimile:  (228) 867-1907
Email:  leilani_tynes@fd.org

*Attorneys for Defendant-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Bonner*
No. 24-60601

The undersigned certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

1. The Honorable Halil Suleyman Ozerden, United States District Judge, Gulfport, Mississippi;

2. Arnett Jackson Bonner, Defendant-Appellant;

3. United States of America, Plaintiff-Appellee;

4. Counsel for Plaintiff-Appellee: Acting United States Attorney Patrick Lemon; and Assistant United States Attorneys Lee Smith and Gaines Cleveland; and

5. Counsel for Defendant-Appellant: Federal Public Defender Omodare Jupiter; Assistant Federal Public Defender Leilani Tynes; and Research & Writing Specialist Victoria McIntyre.

This certification is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ *Leilani Leith Tynes*
**Leilani Leith Tynes**
Assistant Federal Public Defender

## REQUEST FOR ORAL ARGUMENT

Arnett Bonner is permanently disarmed under 18 U.S.C. § 922(g)(1). This appeal concerns serious questions regarding the Government's burden to prove a historical tradition within our Nation's history of imposing permanent disarmament on someone like Mr. Bonner. This appeal further raises important issues concerning an ordinary person's ability to discern which felonies support disarmament under § 922(g)(1). Accordingly, Mr. Bonner requests oral argument and believes it would aid this Court in consideration of the facts and analysis of the issues raised within.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................... i

REQUEST FOR ORAL ARGUMENT ................................................................. ii

TABLE OF CONTENTS .................................................................................. iii

TABLE OF CITATIONS ...................................................................................v

STATEMENT OF JURISDICTION .....................................................................1

STATEMENT OF THE ISSUES .........................................................................2

STATEMENT OF THE CASE ...........................................................................3

SUMMARY OF THE ARGUMENT ...................................................................5

ARGUMENT..................................................................................................7

I.  The district court erred by failing to dismiss the indictment because
    § 922(g)(1) violates the Second Amendment as applied to Mr. Bonner..........7

    A.  Standard of Review ...........................................................................7

    B.  *Bruen* "fundamentally changed" the framework for analyzing
        Second Amendment challenges. ..........................................................7

    C.  The Second Amendment's plain text covers possession under
        § 922(g)(1)........................................................................................8

    D.  The Government has not met its burden to justify Mr. Bonner's
        disarmament. ....................................................................................9

    E.  Section 922(g)(1) is unconstitutional as applied to Mr. Bonner........11

    F.  The district court erred by failing to individually analyze
        Mr. Bonner's as-applied challenge. ...................................................13

II. Section 922(g)(1) is facially unconstitutional under the Second Amendment.
    (Foreclosed by precedent.) .....................................................................14

    A.  Standard of Review ..........................................................................15

    B.  The Nation's historical tradition of regulating firearms is inconsistent
        with permanently stripping those with felony convictions of their
        Second Amendment rights. ...............................................................15

III. Section 922(g)(1) is unconstitutionally vague..............................................18

    A.  Standard of Review ..........................................................................18

    B.  Section 922(g)(1) fails to provide a person of ordinary intelligence
        with fair notice of what conduct is prohibited. ..................................18

C.     The error is plain, it affected Mr. Bonner's substantial rights, and it should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings. ...... 21

IV. Section 922(g)(1) is unconstitutional under the Commerce Clause. (Previously rejected by this Court's precedent.) ........................................ 21

A.     Standard of Review .......................................................................... 21

B.     Section 922(g)(1) constitutes an unconstitutional extension of Congress' authority under the Commerce Clause .............................. 22

C.     The error may become plain, it affected Mr. Bonner's substantial rights, and it should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings. .......................................................................................... 24

V.   The district court erred by denying Mr. Bonner's motion to dismiss because § 922(g)(1) violates the Equal Protection Clause under the Fifth Amendment by burdening Mr. Bonner's fundamental right to keep and bear arms. ................................................................................................... 26

A.     Standard of Review .......................................................................... 26

B.     Section 922(g)(1) violates the Equal Protection Clause. .................... 26

VI. The district court erred by denying Mr. Bonner's motion to suppress evidence. .............................................................................................. 32

A.     Standard of Review .......................................................................... 32

B.     The Fourth Amendment prohibits unreasonable searches and seizures. ........................................................................................... 33

C.     There was no reasonable suspicion to justify the stop of Mr. Bonner's vehicle. ....................................................................... 34

CONCLUSION ................................................................................................ 40

CERTIFICATE OF SERVICE ......................................................................... 41

CERTIFICATE OF COMPLIANCE ................................................................ 42

# TABLE OF CITATIONS

**Cases**

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1994) .............................. 32, 39

*Alderman v. United States*, 131 S. Ct. 700 (2011)............................................ 28, 29

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. 9, 11, 37

*Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*,
   52 F.4th 974 (5th Cir. 2022).....................................................................32

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................23

*Heller v. Dist. of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .................................19

*Henderson v. State*, 878 So.2d 246 (Miss. Ct. App. 2004).....................................46

*Johnson v. California*, 543 U.S. 499 (2005)...........................................................35

*Johnson v. Eisentrager*, 339 U.S. 763 (1950)........................................................36

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).........................................................19

*Katz v. United States*, 389 U.S. 347 (1967) ...........................................................41

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961) .............................................36

*Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621 (1969) .........................34

*Lewis v. United States*, 445 U.S. 55 (1980)............................................................38

*Martin v. State*, 240 So.3d 1047 (Miss. 2017)........................................................46

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ........................................ 35, 36

*Molina-Martinez v. United States*, 578 U.S. 189 (2016)................................... 25, 30

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ................. passim

*NFIB v. Sebelius*, 567 U.S. 519 (2012)....................................................................29

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ..................................................36

*Puckett v. United States*, 556 U.S. 129 (2009) ................................................. 21, 26

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)................. 34, 35, 39

*Scarborough v. United States*, 431 U.S. 563 (1977) ..............................................27

*Spence v. Washington*, 418 U.S. 405 (1974) ...........................................................16

*State v. Eberhardt*, 2013-2306 (La. 7/1/14), 145 So.3d 377 ..................................34

*Terry v. Ohio*, 392 U.S. 1 (1968) .............................................................. 41, 42, 48

*Tran v. State*, 963 So.2d 1 (Miss Ct. App. 2006),
   *aff'd sub nom. Quang Thanh Tran v. State*, 962 So.2d 1237 (Miss. 2007). ........46

*United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013).......................................30

*United States v. Blount*, 123 F.3d 831 (5th Cir. 1997) ...........................................44

*United States v. Connelly*, 117 F.4th 269 (5th Cir. Aug. 28, 2024) ........... 11, 13, 36

*United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003)............................. 37, 38

*United States v. Davis*, 588 U.S. 445 (2019) ..................................................... 23, 24

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ..................................... passim

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001).............................. 37, 38

*United States v. Escalante*, 239 F.3d 678 (5th Cir. 2001) ............................ 44, 46

*United States v. Escalante-Reyes*, 689 F.3d 415 (5th Cir. 2012) .......................22

*United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014).................................................41

*United States v. Hill*, 927 F.3d 188 (4th Cir. 2019)..................................................28

*United States v. Ibarra*, 493 F.3d 526 (5th Cir. 2007)............................................40

*United States v. Knowles*, 29 F.3d 947 (5th Cir. 1994) ............................ 21, 25, 26

*United States v. Lopez*, 514 U.S. 549 (1995)................................................................27

*United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005) .............................41

*United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999) .................. 43, 45, 48

*United States v. Martinez*, 486 F.3d 855 (5th Cir. 2007)........................................48

*United States v. Perez-Macias*, 335 F.3d 421 (5th Cir. 2003)..................... 8, 17, 31

*United States v. Rahimi*, 602 U.S. 680 (2024)................................................... passim

*United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996) ..............................................29

*United States v. Rivera–Gonzalez,* 413 F. App'x. 736 (5th Cir.2011) ..................47

*United States v. Rodea*, 102 F.3d 1401 (5th Cir. 1996)...........................................44

*United States v. Rosales-Giron*, 592 F. App'x 246 (5th Cir. 2014) ......................45

*United States v. Seekins*, 52 F.4th 988 (5th Cir. 2022)...........................................28

*United States v. Seekins*, No. 21-10556,
    2022 WL 3644185 (5th Cir. Aug. 24, 2022)........................................................26

*United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) ........................... 21, 26

*United States v. Urbina-Fuentes*, 900 F.3d 687 (5th Cir. 2018) .................... 25, 31

*United States v. Windsor*, 570 U.S. 744 (2013).........................................................32

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .....................................................36

*Whren v. United States*, 517 U.S. 806 (1996).................................................... 43, 44

*Williams v. State*, 126 So.3d 85 (Miss. Ct. App. 2013).........................................46

*Yick Wo v. Hopkins*, 118 U.S. 356  (1886) ...............................................................32

**Statutes**

18 U.S.C. § 921(a) ...............................................................33
18 U.S.C. § 922(g)(1)...................................................... passim
18 U.S.C. § 925(c) ...............................................................33
18 U.S.C. § 3742 ...................................................................1
28 U.S.C. § 1291 ...................................................................1
Fed. R. App. P. 4(b) ..........................................................1, 4
Fed. R. Crim. P. 11 .............................................................30
Fed. R. Crim. P. 52(b) ................................................... 21, 26
La. R.S. § 14:95.1 ...............................................................34
Miss. Code § 97-37-5............................................................34
Tex. Pen. Code § 46.04 ........................................................34

**Constitutional Provisions**

U.S. Const. amend. II...............................................................8
U.S. Const. amend. IV...........................................................40
U.S. Const. amend. V.............................................................31
U.S. Const. Art. I, § 8 ............................................................27

**Other Authorities**

C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695 (2009)...............................................18
C. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371 (2009).......................................18

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Mississippi entered judgment of conviction and sentence in this case on November 8, 2024. ROA.132-38. Mr. Bonner pleaded guilty pursuant to a plea agreement, and he specifically reserved his right to appeal the district court's order denying his motion to dismiss the indictment. ROA.236, 244, 261 (change of plea), 306-12 (esp. at 310) (plea agreement). Mr. Bonner filed a timely notice of appeal on November 22, 2024. ROA.139; *see* FED. R. APP. P. 4(b). This Court has jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts, and under 18 U.S.C. § 3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

# STATEMENT OF THE ISSUES

**ISSUE ONE:** Whether the district court erred by denying Mr. Bonner's motion to dismiss the indictment where 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to him.

**ISSUE TWO:** Whether the district court erred by denying Mr. Bonner's motion to dismiss the indictment where 18 U.S.C. § 922(g)(1) facially violates the Second Amendment.  (Foreclosed by precedent.)

**ISSUE THREE:** Whether 18 U.S.C. § 922(g)(1) is unconstitutionally vague.

**ISSUE FOUR:** Whether 18 U.S.C § 922(g)(1) is unconstitutional under the Commerce Clause.  (Foreclosed by precedent.)

**ISSUE FIVE:** Whether the district court erred by denying Mr. Bonner's motion to dismiss because 18 U.S.C. § 922(g)(1) violates the equal protection guarantee as protected under the Fifth Amendment.

**ISSUE SIX:** Whether the district court erred by denying Mr. Bonner's motion to suppress where the officer conducted an illegal search of his vehicle in violation of his Fourth Amendment rights.

## STATEMENT OF THE CASE

Defendant-Appellant Arnett Jackson Bonner was indicted by the grand jury on November 29, 2023 with one count of possession of a firearm by a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). ROA.148-50 (indictment). Mr. Bonner filed a motion to suppress evidence obtained from the search of his vehicle pursuant to a traffic stop. ROA.56 (motion to suppress), 58-62 (memorandum in support). A hearing was held on the motion to suppress on May 20, 2024. *See* ROA.166-224. The district court denied the motion at the conclusion of the hearing, ROA.219-24, and it entered a written order to that effect, ROA.112.

Mr. Bonner also moved to dismiss the indictment against him, ROA.63-64 (motion to dismiss). In support, Mr. Bonner argued that § 922(g)(1) violated the Second Amendment on its face, that the statute was unconstitutional as applied to him in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and that § 922(g)(1) violates the equal protection guarantee. ROA.63-64 (motion), 65-77 (memorandum in support). The Government opposed the motion to dismiss, ROA.80-94. The district court denied the motion on the pleadings on April 29, 2024. ROA.108. In its order, the district court determined that "*Bruen* did not clearly abrogate Fifth Circuit precedent holding § 922(g)(1) constitutional under the Second Amendment as applied to any individual

with a qualifying prior conviction," and that Fifth Circuit precedent foreclosed the Fifth Amendment and Commerce Clause arguments. ROA.105. In denying Mr. Bonner's motion, the district court adopted and incorporated by reference opinions denying motions to dismiss concerning different defendants. ROA.106.

Mr. Bonner ultimately pleaded guilty to the indictment, pursuant to a plea agreement. ROA.132 (judgment), 261 (change of plea), 306-12 (plea agreement), 313-15 (plea supplement). He specifically reserved his right to appeal the district court's ruling denying his motion to dismiss the indictment. ROA.236, 244, 261 (change of plea), 306-12 (esp. at 310) (plea agreement). The district court sentenced Mr. Bonner to a 41-month term of imprisonment, to be followed by a three-year term of supervised release. ROA.133-34 (judgment), 278-80 (sentencing). He timely appealed. ROA.139 (notice of appeal); ECF 1; *see* FED. R. APP. P. 4(b).

# SUMMARY OF THE ARGUMENT

After this Court's decision in *United States v. Diaz*, it is clear that the Second Amendment covers the conduct prohibited by § 922(g)(1) and that in order to constitutionally disarm Mr. Bonner, the Government must demonstrate a historical tradition of disarmament or otherwise permanent and severe punishment for certain conduct and also that Mr. Bonner fits within that historical tradition. 116 F.4th 458, 467-69 (5th Cir. 2024). The Government failed to meet this burden and offered no relevant historical analogues to support the permanent and complete disarmament of someone like Mr. Bonner. The district court thus erred by failing to dismiss the indictment charging Mr. Bonner with violating § 922(g)(1) because the statute is unconstitutional as applied to him under the Second Amendment. While Mr. Bonner acknowledges that *Diaz* forecloses his facial challenge to § 922(g)(1), he asserts it here to preserve it for further review.

Moreover, after *Diaz*, § 922(g)(1) is unconstitutionally vague because it fails to provide a person of ordinary intelligence with fair notice of which predicate felonies are supported by a historical tradition sufficient to justify disarmament under the Second Amendment. Section 922(g)(1) further constitutes an unconstitutional extension of Congress's authority under the Commerce Clause because it impermissibly extends federal power over entirely local activity. This

Court has previously rejected this argument, but Mr. Bonner asserts it to preserve it for further review.

The district court also erred by denying the motion to dismiss where § 922(g)(1) violates Mr. Bonner's right to equal protection under the Fifth Amendment because the statute prohibits possession of a firearm based on disparate predicate convictions and without uniform definitions of the circumstances resulting in a person's loss or restoration of the right to possess a firearm. While this Court has previously declined to find that § 922(g)(1) burdens a fundamental right, *Bruen* rendered that case law obsolete, and *Diaz* supports the view that strict scrutiny must apply to Mr. Bonner's challenge. Section 922(g)(1) cannot withstand strict scrutiny because the Government cannot show that it is narrowly tailored to achieve a compelling government interest. Accordingly, it violates the Equal Protection Clause.

Finally, the district court erred by denying Mr. Bonner's motion to suppress where the officer lacked probable cause to justify the initial traffic stop and had no justification for the warrantless search of his vehicle in violation of Mr. Bonner's Fourth Amendment rights. Mr. Bonner respectfully requests that this Court vacate his conviction and sentence, remanding for further proceedings, on any or all grounds raised within.

## ARGUMENT

**I.**     **The district court erred by failing to dismiss the indictment because § 922(g)(1) violates the Second Amendment as applied to Mr. Bonner.**

The Second Amendment mandates: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."   U.S. CONST. amend. II.   Section 922(g)(1) criminalizes firearm possession for any person who has been convicted of a crime punishable for a term exceeding one year.   Under the framework announced in *Bruen* and clarified by this Court in *Diaz*, § 922(g)(1) violates the Second Amendment as applied to Mr. Bonner because the Government failed to prove a Founding-era history and tradition that would allow disarmament or otherwise severe and permanent punishment and that Mr. Bonner fit within that tradition.

### A.     Standard of Review

This Court reviews constitutional challenges to a statute de novo.   *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003).

### B.     *Bruen* "fundamentally changed" the framework for analyzing Second Amendment challenges.

The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).   In *Bruen*, the Court set out "the standard for applying the Second Amendment":

When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24. In other words, when the plain text of the Second Amendment covers the prohibited conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 24 (internal quotation marks and citation omitted).

This Court has now repeatedly affirmed that "*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering our prior precedent obsolete." *United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir. 2023), *rev'd and remanded*, 144 S. Ct. 1889 (2024) (*Rahimi I*); *see Diaz*, 116 F.4th at 465 (same); *id.* (explaining that "[t]he law of orderliness mandates that we abandon that prior [pre-*Bruen* § 922(g)] precedent").

## C. The Second Amendment's plain text covers possession under § 922(g)(1).

Mr. Bonner's conduct is covered by the Second Amendment. *See Diaz*, 116 F.4th at 467 ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Section 922(g)(1) is a complete and permanent ban on all firearm possession, with no limitation on type or use. Thus, because firearm

possession is conduct covered by the Second Amendment, it is presumptively constitutionally protected. *See Bruen*, 597 U.S. at 17.

It is likewise undisputed in this Circuit that those with felony convictions are among "the people" protected by the Second Amendment. *Diaz*, 116 F.4th at 466. While a defendant's status as a felon is relevant to the court's *Bruen* analysis, "it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Id.* at 466-67 (quoting *Bruen*, 597 U.S. at 24). The Second Amendment right belongs to "all Americans." *Heller*, 554 U.S. at 580-81. Accordingly, the categorical ban on an individual's possession of a firearm based on their prior conviction status is presumptively unconstitutional under the plain text of the Second Amendment. *See Bruen*, 597 U.S. at 17.

### D.    The Government has not met its burden to justify Mr. Bonner's disarmament.

The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), *Diaz*, 116 F.4th at 467, therefore the burden shifts to the Government to demonstrate that regulating Mr. Bonner's possession of a firearm "is consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24. To prove that a challenged regulation is consistent with the Nation's historical tradition of firearm regulation, the Government faces a "heavy burden, as the Second

Amendment 'is *not* a second-class right.'" *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (emphasis its own) (quoting *Bruen*, 597 U.S. at 70).

In *Bruen*, the Court held that to justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 24. *United States v. Rahimi* clarified that "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." 602 U.S. 680, 692 (2024) (internal quotation marks and citations omitted). "Why and how the regulation burdens the right are central to this inquiry." *Id.*; *see Bruen*, 597 U.S. at 29. Yet, "[e]ven when a law regulates arms-bearing for a permissible reason, . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 602 U.S. at 692.

For challenged and historical laws to be "relevantly similar" they must "share a common 'why' and 'how': they must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how')." *Connelly*, 117 F.4th at 274. In the context of § 922(g)(1), courts must consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 29). Although the law need not be a "dead

ringer" or "historical twin," it must comport with the principles underlying the Second Amendment. *Rahimi*, 602 U.S. at 692 (internal quotations marks and citation omitted).

### E. Section 922(g)(1) is unconstitutional as applied to Mr. Bonner.

In *Diaz*, this Court applied the Supreme Court's recent Second Amendment jurisprudence and established a new framework for analyzing as-applied challenges to § 922(g)(1). It held that whether § 922(g)(1) is constitutional as applied to a particular defendant depends on whether the Government can establish a Founding generation punished the underlying felony conviction by death or permanent estate forfeiture and that the defendant fits within that tradition. *Diaz*, 116 F.4th at 467-70. When considering a defendant with a prior conviction for vehicle theft, this Court reasoned that because the Government presented evidence that horse thieves in Colonial and Founding Era America were subject to the death penalty, it established that our country has a historical tradition of severely punishing people like Diaz who had been convicted of theft of a vehicle. *Id.* at 468-69. "[I]f capital punishment was permissible," "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.* at 469. Although that analysis resolved the as-applied challenge against Diaz, this Court recognized that the opinion would "not foreclose future as-applied challenges by defendants with different predicate convictions." *Id.* at 470 n.4.

The Government did not prove a historical tradition sufficient to permanently disarm Mr. Bonner. In its response to Mr. Bonner's motion to dismiss, the Government rested on the now clearly erroneous proposition that nothing in *Bruen* altered the constitutionality of § 922(g)(1) and that his challenge was foreclosed because the Second Amendment does not apply to those with felony convictions. ROA.81-93. Although it acknowledged that another court in the Southern District of Mississippi had found § 922(g)(1) unconstitutional as applied where the Government failed to meet its burden to demonstrate historical analogues, ROA.88, the Government made the strategic decision to put forth no evidence and to rest on now obsolete precedent allowing for the categorical disarmament of those with felony convictions, *see* ROA.81-93. Nor did it even allege the specific predicate felony justifying Mr. Bonner's disarmament. Instead, it broadly claimed—without providing specific analogues relevant to Mr. Bonner's criminal history—that laws categorically disarming persons deemed as "unvirtuous or untrustworthy—including Catholics in England, Native Americans and enslaved people in the early colonies, and loyalists during the Revolutionary War" supported the disarmament of anyone with a felony conviction. ROA.92-93. This argument is not analogous to the facts here and is insufficiently specific to constitutionally disarm Mr. Bonner. *See Diaz*, 116 F.4th at 467.

Since *Diaz* treats the historical practice of severe felony punishments—like execution and total estate forfeiture—as equivalent to disarmament, § 922(g)(1) can be constitutionally applied to Mr. Bonner only if the Government demonstrates such a tradition and shows that Mr. Bonner fits within it. *See id.* at 469-70. In the absence of any historical evidence and any allegations that Mr. Bonner fits within such a tradition of disarmament, he cannot be constitutionally disarmed consistent with the Second Amendment. *See id.* at 470. The district court accordingly erred by denying his motion to dismiss where the Government failed to meet its heavy burden in any respect. Section 922(g)(1) is unconstitutional as applied to Mr. Bonner and his conviction must be vacated.

**F.    The district court erred by failing to individually analyze Mr. Bonner's as-applied challenge.**

In an as-applied challenge, the court must assess whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974). Thus, it is an inherently individualized analysis. *Diaz*'s mandate confirms this: "To survive [an] as-applied challenge, the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [his]." 116 F.4th at 467; *see id.* at 470 n.4 (noting that a defendant with different predicate convictions may survive an as-applied challenge and indicating the individualized nature of the inquiry). Instead of engaging in a *Diaz* analysis considering whether

Mr. Bonner's individual predicate conviction justified his disarmament consistent with the Second Amendment, the district court denied Mr. Bonner's motion by adopting the reasoning outlined in its previous decisions, concerning defendants with different criminal histories and prior predicate felonies. ROA.106. *Diaz* instructs that all felonies are not created equally. *Diaz*, 116 F.4th at 469 ("We emphasize that our holding is not only premised on the fact that Diaz is a felon. Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny."). The district court's analysis of an as-applied challenge relative to a different defendant is not relevant to an individualized analysis of Mr. Bonner's challenge. A tradition of disarming another defendant with different predicate convictions does not fit within a tradition of serious and permanent punishment disarming Mr. Bonner. *See Diaz*, 116 F.4th at 469-70. The district court erred by failing to conduct an individualized analysis of Mr. Bonner's as-applied constitutional challenge.

## II.   Section 922(g)(1) is facially unconstitutional under the Second Amendment. (Foreclosed by precedent.)

Although this Court recently held that § 922(g)(1) is not facially unconstitutional, *see Diaz*, 116 F.4th at 472, foreclosing this challenge, Mr. Bonner raises the issue to preserve it for further review.

## A. Standard of Review

This Court reviews constitutional challenges to a statute de novo. *Perez-Macias*, 335 F.3d at 425.

## B. The Nation's historical tradition of regulating firearms is inconsistent with permanently stripping those with felony convictions of their Second Amendment rights.

Section 922(g)(1) broadly addresses a general societal concern that has persisted since the eighteenth century: how society treats those members who violate the law, including whether those members retain their constitutional right to keep and bear arms (the "why"). The Government cannot meet its burden under *Bruen* and *Rahimi* because the Nation's historical tradition of regulating firearms, even against those with felony convictions, is incompatible with the total and permanent categorical ban imposed by § 922(g)(1) (the "how"). There simply is no "relevantly similar" historical tradition of permanently stripping people with felony convictions of their Second Amendment rights. On its face, § 922(g)(1) prohibits Mr. Bonner, a member of "the people" protected by the Second Amendment, from engaging in the exact conduct the Amendment sought to place beyond regulation—the mere possession of a firearm. Since § 922(g)(1) prohibits conduct protected by the Second Amendment, the law is facially unconstitutional.

Many scholars have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." C.

Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 HASTINGS L.J. 1371, 1374-79 (2009); C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 HARV. J.L. & PUB. POL'Y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century). Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451, 453-64 (7th Cir. 2019) (Barrett, J., dissenting) (surveying history); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century.").

The Government has repeatedly attempted to justify § 922(g)(1) by pointing to historical authority that allowed for the disarmament of disempowered minority communities, including enslaved peoples and racial, religious, and ethnic minorities. Many of these types of categorical restrictions were rejected by the Second Amendment and should serve as "cautionary tales" today. *Rahimi*, 602 U.S. at 776 (Thomas, J., dissenting) ("Far from an exemplar of Congress's authority, the discriminatory regimes the Government relied upon are cautionary tales. They warn that when majoritarian interests alone dictate who is 'dangerous,' and thus can be disarmed, disfavored groups become easy prey."). But even those of arguable historical relevance do not "impose a comparable burden on the right" and are not

"comparably justified" to § 922(g)(1)'s categorical disarmament of felons.  *Bruen*, 597 U.S. at 29 (explaining the metrics of comparing "relevantly similar" analogues).

Given the history of firearm regulation in America, there is "no set of circumstances under which" § 922(g)(1) "would be valid."  *Rahimi*, 602 U.S.. at 693 (internal quotation marks and citation omitted).  Founding Era constitutions frequently premised both qualifications to vote and eligibility to hold office on the absence of certain criminal convictions.  None incorporated a similar disqualification into the right to keep and bear arms.  This Nation, in turn, has no tradition of criminalizing the mere possession of a firearm by someone like Mr. Bonner.  Even in the Founding Era, legislators knew that some individuals convicted of serious crimes would return to society after completing a sentence of imprisonment longer than one year.  Since no group of criminals were historically disarmed, no application of § 922(g)(1) can comply with the Second Amendment.  That reality makes § 922(g)(1) facially unconstitutional.  Because no analogous tradition of regulation exists, § 922(g)(1) cannot be constitutionally applied against Mr. Bonner or any other individual with a felony conviction.  Based on the foregoing, the statue is facially unconstitutional because it violates the Second Amendment in all applications.  *See Rahimi*, 602 U.S. at 693.

## III. Section 922(g)(1) is unconstitutionally vague.

### A. Standard of Review

This Court reviews for plain error issues raised for the first time on appeal. *United States v. Toure*, 965 F.3d 393, 399 (5th Cir. 2020); *see* FED. R. CRIM. P. 52(b). To prevail, Mr. Bonner must show an error that is clear or obvious and affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). This Court then has the discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* A conviction under an unconstitutional statute meets the plain error standard. *See United States v. Knowles*, 29 F.3d 947, 951-52 (5th Cir. 1994). Where the law is unsettled at the time of trial but settled by the time of appeal, the plainness of the error is judged by the law at the time of appeal. *United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012).

### B. Section 922(g)(1) fails to provide a person of ordinary intelligence with fair notice of what conduct is prohibited.

Although this Court concluded that § 922(g)(1) is not unconstitutional in all applications, *Diaz*, 116 F.4th at 471-72, the framework announced in *Diaz* renders § 922(g)(1) unconstitutional because a person of ordinary intelligence now lacks fair notice of what predicate felony convictions are supported by a longstanding historical tradition of disarmament or otherwise severe punishment so as to justify permanent disarmament today. In *Diaz*, this Court recognized that while § 922(g)(1)

was constitutional as applied to Diaz's specific prior felony convictions, that was not necessarily the case for every prior felony conviction:

> We emphasize that our holding is not only premised on the fact that Diaz is a felon. Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny. The legislature has determined that the term "felony" encompasses all crimes punishable by more than one year of imprisonment, rendering Diaz a felon today. But not all felons today would have been considered felons at the Founding.

*Id.* at 469; *see id.* at 470 n.4 (acknowledging that other predicate convictions may not justify disarmament under § 922(g)(1)). Post-*Diaz*, there are now many individuals who have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), but who cannot be disarmed consistent with the Second Amendment because the Government cannot show a longstanding tradition of disarming someone with their specific prior convictions, *see Diaz*, 116 F.4th at 467.

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 588 U.S. 445, 447 (2019). The Constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them." *Id.* Due process guarantees that a "person of ordinary intelligence [have] a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Under the current test permitting disarmament only if the Government "demonstrate[s] that the Nation has a

longstanding tradition of disarming someone with [an analogous] criminal history," an ordinary person cannot know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. *Diaz*, 116 F.4th at 467. There is nowhere that an ordinary person with a past felony conviction can look for a "sure way to know what consequences will attach to their conduct," and to determine whether possessing a firearm is constitutionally permitted or will expose them to federal prosecution. *Davis*, 588 U.S. at 448. *Bruen*, *Rahimi*, and *Diaz* make clear that it is not enough to look to the statute for guidance, and caselaw is likewise unhelpful as *Diaz* requires courts to engage in historical analysis for each predicate felony to ensure that there is a sufficient longstanding tradition of disarmament.

"When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 588 U.S. at 448. Section § 922(g)(1) is facially unconstitutional because it fails to provide an ordinary person with fair notice of what conduct is prohibited. Accordingly, this Court should dismiss the indictment and "invite Congress to try again." *Id.*

**C. The error is plain, it affected Mr. Bonner's substantial rights, and it should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings.**

As explained within, post-*Diaz*, § 922(g)(1) is plainly unconstitutionally vague and it is of no consequence that *Diaz* was decided after the proceedings in the district court concluded. *See Knowles*, 29 F.3d at 952. An error affects substantial rights if there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (internal quotation marks and citation omitted). Mr. Bonner would not have pleaded guilty to an unconstitutional charge and the result of his proceedings would thus obviously be different absent any error.

An error will typically have a serious effect on the fairness, integrity, and public reputation of proceedings if it is "reasonably likely to have resulted in a longer prison sentence than necessary." *United States v. Urbina-Fuentes*, 900 F.3d 687, 698 (5th Cir. 2018) (internal quotation marks and citation omitted). Mr. Bonner received a sentence of imprisonment under an unconstitutional statute. Accordingly, this Court should vacate Mr. Bonner's conviction.

**IV. Section 922(g)(1) is unconstitutional under the Commerce Clause. (Previously rejected by this Court's precedent.)**

**A. Standard of Review**

This Court reviews for plain error issues raised for the first time on appeal. *Toure*, 965 F.3d at 399; *see* FED. R. CRIM. P. 52(b). To prevail, Mr. Bonner must

show an error that is clear or obvious and affects his substantial rights. *Puckett*, 556 U.S. at 135. This Court then has the discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* A conviction under an unconstitutional statute meets the plain error standard. *See Knowles*, 29 F.3d at 951-52. Where the law is unsettled at the time of trial but settled by the time of appeal, the plainness of the error is judged by the law at the time of appeal. *Escalante-Reyes*, 689 F.3d at 423. This Court has previously rejected this Commerce Clause-based argument. *See United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (summarizing precedent). However, Mr. Bonner raises it here for possible further review by the Supreme Court.

## B. Section 922(g)(1) constitutes an unconstitutional extension of Congress' authority under the Commerce Clause

Article I, § 8 of the United States Constitution provides: "Congress shall have power" to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." The test for determining the scope of Congressional power to regulate activities affecting interstate commerce is set forth in *United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the Supreme Court found that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.* at 559. The *Lopez* decision appeared to, but did not expressly, overrule the more permissive test for federal regulation of gun possession

articulated in *Scarborough v. United States*, 431 U.S. 563 (1977), which required only the "minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575; *cf. United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc) (suggesting the holding in *Scarborough* was statutory, and not constitutional).

Members of the Supreme Court and this Court have noted that *Lopez* and *Scarborough* are irreconcilable. *See Alderman v. United States*, 131 S. Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of certiorari) ("*Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez*."); *Seekins*, 52 F.4th at 991-92 (Ho, J., dissenting) (citing cases); *United States v. Kuban*, 94 F.3d 971, 977 (5th Cir. 1996) (DeMoss, J., dissenting) ("[T]he precise holding in *Scarborough* is in fundamental and irreconcilable conflict with the rationale of [*Lopez*]."). But the Supreme Court has not addressed the precise impact of *Lopez* on *Scarborough*. *See United States v. Hill*, 927 F.3d 188, 215 n.10 (4th Cir. 2019) (Agee, J., dissenting) ("While some tension exists between *Scarborough* and the Supreme Court's decision in *Lopez*, the Supreme Court has not granted certiorari on a case that would provide further guidance"). Lacking clear guidance, courts after *Scarborough* have continued to hold that § 922(g)(1)'s nexus element can be satisfied if the firearm traveled—at any point—across a state boundary. *See, e.g., United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996). This minimal nexus requirement in *Scarborough*

does not satisfy *Lopez*. *Scarborough*'s reading of the § 922(g)(1) nexus element is thus too broad, and it impermissibly extends federal power over purely local activity. The Commerce Clause power "must be read carefully to avoid creating a general federal authority akin to the police power." *NFIB v. Sebelius*, 567 U.S. 519, 536 (2012); *see also Alderman*, 131 S. Ct. at 703 (Thomas, J., dissenting) ("[P]ermit[ting] Congress to regulate or ban possession of any item that has ever been offered for sale or crossed state lines" would be "[s]uch an expansion of federal authority" as to "trespass on state police powers."). Section 922(g)(1) is an unconstitutional extension of Congress's authority under the Commerce Clause.

**C.  The error may become plain, it affected Mr. Bonner's substantial rights, and it should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings.**

Although thus far this Court has adhered to the view that *Scarborough*'s "minimal nexus" is sufficient both to prove guilt under the statute and to bring any subsequent act of possession within Congress's power to regulate, *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013), Mr. Bonner submits that if he ultimately prevails on the position that the statute requires more, the district court erred under Federal Rule of Criminal Procedure 11 by accepting Mr. Bonner's guilty plea based solely on the fact that the firearm was manufactured outside of Mississippi. *See* ROA.259. The court then both would have misadvised Mr. Bonner of the nature of the charge and convicted Mr. Bonner on an insufficient basis. *See*

FED. R. CRIM. P. 11(b)(1)(G), 11(b)(3). Because of the Rule 11(b)(1)(G) error, moreover, the voluntariness of Mr. Bonner's plea is called into question. If the long-accepted interpretation of § 922(g)'s nexus element for possession is wrong, then this Court should vacate the conviction. The district court erred by accepting the plea if the nexus element for possession requires more.

An error affects substantial rights if there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez*, 578 U.S. at 194 (internal quotation marks and citation omitted). Mr. Bonner would not have pleaded guilty to an unconstitutional charge and the result of his proceedings would thus obviously be different absent any error. Moreover, an error will typically have a serious effect on the fairness, integrity, and public reputation of proceedings if it is "reasonably likely to have resulted in a longer prison sentence than necessary." *Urbina-Fuentes*, 900 F.3d at 698 (internal quotation marks and citation omitted). Mr. Bonner received a sentence of imprisonment under an unconstitutional statute. Accordingly, this Court should vacate Mr. Bonner's conviction.

**V.** **The district court erred by denying Mr. Bonner's motion to dismiss because § 922(g)(1) violates the Equal Protection Clause under the Fifth Amendment by burdening Mr. Bonner's fundamental right to keep and bear arms.**

### A. Standard of Review

This Court reviews constitutional challenges to a statute de novo. *Perez-Macias*, 335 F.3d at 425.

### B. Section 922(g)(1) violates the Equal Protection Clause.

The Fifth Amendment provides that no one shall "be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1994) (noting that the Court's approach to Fifth Amendment equal protection claims is the same as to equal protection claims under the Fourteenth Amendment's equal protection clause). The Fifth and Fourteenth Amendments establish that "equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights" and that "in the administration of criminal justice, no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses." *Yick Wo v. Hopkins*, 118 U.S. 356, 367-68 (1886) (internal quotations omitted).

### 1. Section 922(g)(1) treats similarly situated individuals differently.

To establish an equal protection claim, a defendant must demonstrate that a statute treats similarly situated individuals differently. *Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 977 (5th Cir. 2022). Section 922(g)(1) treats identically situated persons differently in two meaningful ways. First, the statute lacks a uniform definition of the conduct that will result in the loss of the right to possess a firearm, instead relying on diverse state definitions to determine what constitutes a crime punishable by more than one year supporting disarmament. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.").

Second, § 922(g)(1) does not consistently restore the right to keep and bear arms and instead relies upon disparate state restoration schemes, resulting in a lack of uniform application. *See id.* Section 921(a)(2) provides that,

> any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

State restoration laws vary greatly. For example, Mississippi law permanently disarms a felon, allowing for restoration of the right only based upon a pardon, a relief from disability pursuant to 18 U.S.C. § 925(c), or upon receipt of a certificate

of rehabilitation.  Miss. Code § 97-37-5.  Meanwhile, the State of Louisiana has a 10-year cleansing period, and it bars possession of a firearm by anyone convicted of a crime of violence, sex crime, or drug crime for 10 years from discharge of a sentence, probation, or parole, regardless of receipt of a first offender pardon.  La. R.S. § 14:95.1(C); *State v. Eberhardt*, 2013-2306 (La. 7/1/14), 145 So.3d 377.  In Texas, a felon may possess a firearm five years after their release from confinement or supervision, but only at "the premises at which the person lives."  Tex. Pen. Code § 46.04.

2. **Section 922(g)(1) burdens a fundamental right and must therefore be reviewed under strict scrutiny.**

Equal protection analysis requires strict scrutiny when a law impermissibly interferes with the exercise of a fundamental right.  *See Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621, 626, 633 (1969).  A right is "fundamental" for equal protection purposes if it is "explicitly or implicitly guaranteed by the Constitution."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973).[1]  The Government bears the burden of proving that a statute meets strict scrutiny, *i.e.*, that it is narrowly

---

[1] There may also be certain rights that fall outside of the text of the Constitution yet nonetheless trigger strict scrutiny under an equal protection analysis as "fundamental rights."  *See Rodriguez*, 411 U.S. at 99-100 (Marshall, J., dissenting) (noting the Court has seemingly applied heightened scrutiny to laws infringing on rights not explicitly or implicitly guaranteed by the Constitution, including the right to procreate, the right to vote in state elections, and the right to appeal a criminal conviction).  Regardless, the right to possess a firearm is enshrined in the Second Amendment and thus constitutionally guaranteed and "fundamental."  *Id.* at 35.

tailored to further a compelling governmental interest.  *See Johnson v. California*, 543 U.S. 499, 505 (2005).

The Second Amendment right to bear arms is a fundamental right under the Constitution.  Indeed, the Supreme Court has recognized this right as among the "fundamental rights necessary to our system of ordered liberty."  *Rahimi*, 602 U.S. at 680 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010)); *see Rahimi I*, 61 F.4th at 461 (Ho, J., concurring) ("The right to keep and bear arms has long been recognized as a fundamental civil right.").  The Supreme Court has repeatedly analogized the Second Amendment to other constitutional rights guaranteed to every American, *see, e.g., Johnson v. Eisentrager*, 339 U.S. 763 (1950) (describing the First, Second, Fourth, Fifth and Sixth Amendments as the "civil-rights Amendments"); *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49-50 n.10 (1961) (comparing "the commands of the First Amendment" to "the equally unqualified command of the Second Amendment"); *Bruen*, 597 U.S. at 18-19, 24, and it is beyond dispute that the Second Amendment is *not* a second-class right, *Connelly*, 117 F.4th at 274; *Bruen*, 597 U.S. at 70; *McDonald*, 561 U.S. at 780.[2]

---

[2] Moreover, the Court has frequently relied on history when deciding cases involving textually unenumerated rights under the Due Process Clause, regularly observing that the Fourteenth Amendment "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotation marks omitted); *see, e.g., Pierce v. Society of Sisters*, 268 U.S. 510, 534-45 (1925) ("liberty of parents and guardians to direct the upbringing and education of children under their control").

Section 922(g)(1) thus burdens Mr. Bonner's fundamental right to keep and bear arms. *Diaz*, 116 F.4th at 467 ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Although this Court had previously declined to find that § 922(g)(1) burdens a fundamental right, it did so based on precedent that presumed that felons had no Second Amendment rights, *see, e.g., United States v. Darrington*, 351 F.3d 632, 634-35 (5th Cir. 2003); *see also Heller*, 554 U.S. at 626. In *Diaz*, this Court specifically rejected the Government's argument that felons lack Second Amendment protection based purely on their status. 116 F.4th at 466-67. It likewise rejected the argument that pre-*Bruen* precedent applying "means-ends" scrutiny like *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) and *Darrington* foreclosed Second Amendment challenges:

> [E]ach of those cases predates *Bruen*, which established a new historical paradigm for analyzing Second Amendment claims. Under the rule of orderliness, a later panel may overturn another panel's decision when it has fallen unequivocally out of step with some intervening change in the law. *Bruen* constitutes such a change, rendering our prior precedent obsolete.

*Diaz*, 116 F.4th at 465 (internal quotation marks and citations omitted); *see also Bruen*, 597 U.S. at 19, 22-24.

In *Darrington*, this Court relied upon the Supreme Court's now erroneous view that "legislative restrictions on the use of firearms" do not "trench upon any constitutionally protected liberties." 351 F.3d at 635 (quoting *Lewis v. United States*, 445 U.S. 55 (1980)). The *Darrington* Court supported its determination that

§ 922(g)(1) was subject to rational basis review, rather than strict scrutiny, by relying on *Emerson*'s exclusion of "felons as a class from the Second Amendment's protection of 'the right of Americans generally to keep and bear their private arms as historically understood in this country.'" 351 F.3d at 635 (quoting *Emerson*, 270 F.3d at 261).

*Diaz* has now made clear that the reasoning in *Darrington* and *Emerson* was based on an "obsolete" and faulty presumption that felons categorically do not receive Second Amendment protection. *Diaz*, 116 F.4th at 467 (noting that status as a felon is not relevant in considering the Second Amendment's initial applicability); *id.* ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Accordingly, any reliance upon pre-*Bruen* precedent like *Darrington* and *Emerson* is misplaced.

*Diaz* established that *Darrington* and *Emerson* are unpersuasive post-*Bruen*. *See Diaz*, 116 F.4th at 467. Mr. Bonner has a fundamental right to keep and bear arms and this Court should therefore apply strict scrutiny to § 922(g)(1). Classifications involving a fundamental right are presumed unconstitutional and survive strict scrutiny only when the Government can demonstrate that the law uses the least restrictive means to achieve a compelling purpose. *See Rodriguez*, 411 U.S. at 1. The Government cannot and did not attempt to meet this burden. *See* ROA.93.

### 3. Section 922(g)(1) cannot survive strict scrutiny.

Under strict scrutiny, § 922(g)(1) must fail. The Government must show that the classifications in § 922(g)(1) are "narrowly tailored measures that further compelling governmental interests." *Adarand Constructors, Inc.*, 515 U.S. at 227. The statute is far from the least restrictive means to address the problem of gun violence. Moreover, it depends on varying state law regimes for defining criminal conduct, permanently disarming some individuals while failing to disarm other individuals convicted of the same conduct. Likewise, the statute restores the right to bear arms for some, but not others, dependent on disparate state restoration schemes. The statute is therefore unconstitutional and violates the Fifth Amendment's equal protection guarantee. This Court should accordingly dismiss the indictment filed against Mr. Bonner.

### VI. The district court erred by denying Mr. Bonner's motion to suppress evidence.

#### A. Standard of Review

This Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). The evidence is viewed in the light most favorable to the prevailing party. *Id.*

**B.     The Fourth Amendment prohibits unreasonable searches and seizures.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. CONST. amend. IV, and a warrantless search is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357 (1967) (citations omitted). Traffic stops are deemed seizures for purposes of the Fourth Amendment and the legality of such a stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, an officer may briefly detain a person only if the "officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). Under the two-part *Terry* inquiry, the officer's action must be (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20. For a traffic stop to be justified at its inception, an officer must have a reasonable suspicion that illegal activity occurred or was about to occur before stopping the vehicle. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). An officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably

warrant the search and seizure." *Id.* An officer's mere "hunch" cannot create reasonable suspicion. *Terry*, 392 U.S. at 27.

### C. There was no reasonable suspicion to justify the stop of Mr. Bonner's vehicle.

The officer's stop of Mr. Bonner's vehicle was not justified at its inception because the officer lacked sufficient reasonable suspicion that a traffic violation had occurred. The officer testified that his suspicions were aroused when he noticed Mr. Bonner move "from a relaxed state to . . . a 10 and 2" driving position in 70-mile-per-hour traffic. ROA.171, 193-95. He then ran the vehicle's license plate and saw that the vehicle was a rental originating in Oklahoma. ROA.173. The officer followed Mr. Bonner even though he had not committed a traffic violation and admittedly did not have probable cause to pull him over. ROA.176, 198-200. The officer was in an unmarked car, ROA.171, 192-93, and he testified that he exceeded the speed limit to catch up and closely follow Mr. Bonner's vehicle without activating his emergency lights or in any way indicating that he was law enforcement, ROA.198-99, 201-02. The officer was waiting for Mr. Bonner to commit a traffic violation so that he could pull him over and agreed that the stop was pretextual, based only on Mr. Bonner driving "at ten and two" a car rented in Oklahoma. ROA.200, 208. The officer admitted that he "didn't have enough at that point to do what's called a reasonable articulable suspicion stop, but [he] had enough to . . . target that vehicle." ROA.208. Finally, the officer indicated that Mr. Bonner

used a turn signal to move from the southbound lane to head northbound, ROA.176, 199, allegedly violating the Mississippi careless driving statute, and at that point the officer turned on his emergency lights and conducted a traffic stop, ROA.176.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). Although a pretextual stop does not violate the Fourth Amendment if probable cause exists, an officer cannot constitutionally create the very probable cause upon which he relies to make a stop. *See id.* at 289 ("But if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive."). *Whren* rejected the notion that the subjective intent of an officer can be used in assessing the constitutional reasonableness of a stop, but it did not give officers free range to create their own probable cause. *See Whren*, 517 U.S. at 813-14.

There is an important distinction between the pretext addressed in *Whren* and the creation of probable cause that occurred here. Where an officer conducts a pretextual stop, he does "under the guise of enforcing the traffic code what [he] would like to do for different reasons." *Id.* at 814. Here, the officer admitted that

the stop was pretextual. ROA.208. He proceeded after Mr. Bonner on a hunch, closely tailed and distracted him, and essentially created the probable cause that he needed to stop him. "In other words, [he] elicited a response from [Mr. Bonner], whose conduct to that point had not given rise to probable cause, and then used that response against him." *United States v. Escalante*, 239 F.3d 678, 682 (5th Cir. 2001) (Stewart, J., dissenting).

Officers may stop a vehicle when there is probable cause to believe that a traffic violation has occurred, even if the stop is otherwise pretextual. *See Lopez–Valdez,* 178 F.3d at 288. But "where the supposed traffic infraction that formed the basis for a vehicular stop in fact was not a violation of state law, there [is] no objective basis for probable cause justifying the stop." *Id.* Officers cannot create their own exigent circumstances to justify a warrantless search. *See United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997) (en banc) ("It is true that the prosecution may not rely upon an exigency that the police themselves created through unreasonable investigatory tactics."); *United States v. Rodea*, 102 F.3d 1401, 1409 (5th Cir. 1996) ("Needless to say, the exigent circumstances exception does not apply if the Government created or 'manufactured' the exigency."). Likewise, the officer could not constitutionally rely on probable cause that he created by closely tailing Mr. Bonner in an unmarked vehicle to validly stop him under the Fourth Amendment.

The district court determined that the officer had reasonable suspicion to stop Mr. Bonner after he allegedly violated the Mississippi careless driving statute by shifting from the right lane—which would have led him south—to the left lane headed north and allegedly crossed over the white lines in doing so.  ROA.216-18. While the district court cited this Court's unpublished decision in *United States v. Rosales-Giron*, 592 F. App'x 246 (5th Cir. 2014) and the Mississippi Court of Appeal's decisions in *Henderson v. State*, 878 So.2d 246 (Miss. Ct. App. 2004) for the proposition that under Mississippi law, "a court must reasonably interpret a wide range of factors when determining carelessness under the careless-driving statute," this case did not present "wide-ranging" factors sufficient to find probable cause.

Even in cases upholding traffic stops based on the most minimal conduct, drivers swerved, weaved, or consistently drove in the middle of two lines of traffic. *See, e.g., United States v. Escalante*, 239 F.3d 678, 679 (5th Cir. 2001) (weaving across the lane divider line two or three times); *Martin v. State*, 240 So.3d 1047, 1049 (Miss. 2017) (crossing fog line on one occasion and touching fog line on second occasion); *Williams v. State*, 126 So.3d 85, 89 (Miss. Ct. App. 2013) (weaving out of lane of traffic and across the fog line); *Tran v. State*, 963 So.2d 1, 13-14 (Miss Ct. App. 2006) (crossing the fog line and swerving off the side of the road and crossing marker lines), *aff'd sub nom. Quang Thanh Tran v. State*, 962

So.2d 1237 (Miss. 2007). Mr. Bonner's alleged change of lanes while using his turn indicator does not fit within the careless driving statue.

Moreover, this Court's case law shows that it may account for the effect of an officer's presence immediately behind or beside a defendant's vehicle when analyzing the defendant's driving behavior. *Cf. United States v. Rivera–Gonzalez,* 413 F. App'x. 736, 739–40 (5th Cir.2011) (unpublished) (noting that "when the officer's actions are such that any driver, whether innocent or guilty, would be preoccupied with his presence, then any inference that might be drawn from the driver's behavior is destroyed," and that even "abnormal turn-signaling might qualify as innocent" because "[e]ven an innocent driver wondering why a Border Patrol car is following for several miles might forget to turn off a turn signal." (citations and internal quotation marks omitted)). Not only was the "10 and 2" behavior observed when Mr. Bonner drove past a marked Mississippi State Highway Patrol Trooper, ROA.171, but the officer in the unmarked car was closely following Mr. Bonner moving through traffic, which would cause any driver reason to be alarmed and want to evade the unknown and potentially dangerous follower.

The district court erred by determining that reasonable suspicion existed to justify the traffic stop because the officer lacked probable cause that a traffic violation had been committed. *See Lopez-Valdez*, 178 F.3d at 288. Thus, the stop constituted an illegal seizure under the Fourth Amendment and the district court

erred by failing to suppress all evidence obtained as a result of the illegal stop as fruit of the poisonous tree. *See Terry*, 392 U.S. at 21; *United States v. Martinez*, 486 F.3d 855, 864 (5th Cir. 2007)

## CONCLUSION

The Government has failed to meet its burden of offering relevant historical analogues to meet its burden of proof post-*Diaz* to justify Mr. Bonner's disarmament. Accordingly, § 922(g)(1) is unconstitutional as applied to Mr. Bonner. Moreover, after *Diaz*, it is untenable that *any* felony conviction can support disarmament under § 922(g)(1). Thus, the statute is unconstitutionally vague because a person of ordinary intelligence cannot discern whether their possession of a firearm is a constitutional entitlement or a federal felony. The statute further violates the Equal Protection Clause due to its disparate treatment of similarly situated individuals. Finally, the district court erred by denying Mr. Bonner's motion to suppress where the arresting officer lacked reasonable suspicion to initiate the traffic stop of Mr. Bonner's vehicle. Mr. Bonner submits that his conviction and sentence must therefore be vacated and remanded for further proceedings based on any or all grounds raised within.

Respectfully submitted,

**Omodare B. Jupiter**
Federal Public Defender

s/ *Leilani L. Tynes*
**Leilani L. Tynes**
Assistant Federal Public Defender

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I, Leilani Tynes, certify that on March 3, 2025, a copy of the Brief for Appellant was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF System. A copy of this brief was also delivered via United States Mail, postage prepaid, to Defendant-Appellant Arnett Jackson Bonner.

s/ *Leilani L. Tynes*
**Leilani L. Tynes**
Assistant Federal Public Defender

# CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g)(1) and 5TH CIR. R. 32.3, the undersigned

certifies as follows:

1.  This document complies with the type-volume limitations of FED. R. APP. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 8,968 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style in text and 12-point font size and Times New Roman type style in footnotes.

3.  This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4.  This brief complies with the privacy-redaction requirements of 5TH CIR. R. 25.2.13 because it has been redacted of any personal data identifiers.

5.  This brief complies with the electronic-submission requirement of 5TH CIR. R. 25.2.1 because it is an exact copy of the paper document.

6.  This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.


Dated: March 3, 2025                          s/ *Leilani L. Tynes*
                                              **Leilani L. Tynes**
                                              Assistant Federal Public Defender